# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40039
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOEL RENE CISNEROS,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:13-CR-267-1

Before KING, JOLLY, and HAYNES, Circuit Judges.

PER CURIAM:*

Joel Rene Cisneros pleaded guilty conditionally to possession of marijuana with intent to distribute and received a 60-month prison term. He now appeals the denial of his motion to suppress evidence obtained as the result of a stop by a Border Patrol agent, arguing that the agent lacked reasonable suspicion. Finding no error, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40039

We review the ultimate constitutionality of the stop, including whether there was reasonable suspicion, de novo. *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir. 2003). In the context of a roving Border Patrol stop, we look to the totality of the circumstances, including the familiar *Brignoni-Ponce* factors. *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). The first factor, proximity to the border, supports reasonable suspicion, as the agent encountered Cisneros's SUV half a mile from the border, traveling north on Mines Road, which leads to the Columbia International Bridge. *See United States v. Zapata-Ibarra*, 212 F.3d 877, 881 (5th Cir. 2000). As for the second factor, characteristics of the area, the agent testified that this area of Mines Road is heavily used by drug and alien traffickers. Although this factor is tempered by the road's use for legitimate purposes, *see United States v. Diaz*, 977 F.2d 163, 165 (5th Cir. 1992), it is nevertheless relevant. *See Jacquinot*, 258 F.3d at 429. Further, even if only minimally supportive, this factor is bolstered by the traffic patterns and recent illegal activity, the third and seventh factors. *See id.* at 427. At that time of night, according to the agent, traffic is usually light, and the road tends to be used by smugglers. Further, the agent was part of a Special Operations Group that had recovered 2,000 to 3,000 pounds of marijuana in the preceding two months. *See United States v. Orozco*, 191 F.3d 578, 582 (5th Cir. 1999).

The fifth factor, Cisneros's behavior, also supports the stop. When the agent first saw him, Cisneros was traveling north and took a turnaround heading south, traveling 40 to 45 miles per hour, below the posted speed limit of 60 miles per hour. He slowed to 20 to 30 miles per hour when the agent tried to drop behind him to read his license plate, changed lanes without signaling after the agent did drop behind him, and took a turnaround heading back north, all of which suggested evasiveness to the agent. A few minutes later, he

returned southbound traveling near the speed limit but again slowed to 20 to 30 miles per hour when the agent pulled up next to him.  The agent testified that Cisneros's pattern of driving slowly and then taking a turnaround southbound was consistent with illicit traffickers making a pickup.  Cisneros's dramatic and unnecessary deceleration both times he encountered the agent also adds to reasonable suspicion.  *See Jacquinot*, 258 F.3d at 429.  Although Cisneros contends that changing lanes, driving slowly, and taking a turnaround were consistent with innocent behavior of a driver unfamiliar with the area and driving on a dark road with small road signs, when viewed in totality rather than in isolation, Cisneros's actions support reasonable suspicion.  *See id.* at 430.

In addition, all the circumstances must be considered together in light of the agent's experience (the fourth factor).  *See Neufeld-Neufeld*, 338 F.3d at 380.  The agent had been with the Border Patrol for more than 11 years; he was a supervisory agent; he had worked in the Laredo area for most of his time as an agent; and he had made 100 to 200 immigration stops.

The eighth factor (number and behavior of passengers) is not implicated. Given the other factors, we need not consider the SUV's characteristics (the fourth factor), namely, its tinted windows.  *Cf. United States v. Villalobos*, 161 F.3d 285, 290 (5th Cir. 1998).

In short, although each fact alone may not be sufficient to create reasonable suspicion, taken as a whole, and viewed "through the lens of [the agent's] experience," they support the decision to stop the SUV.  *See Neufeld-Neufeld*, 338 F.3d at 376-77, 382.  The judgment of the district court is AFFIRMED.